UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.:  2:98-CV-12-TS |
| | ) | |
| THINK ACHIEVEMENT CORP., et al., | ) | |
|     Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| LePETOMANE, INC., as Successor | ) | |
| Permanent Equity Receiver of the Estates | ) | |
| of William H. Tankersley and Linda | ) | |
| Tankersley, | ) | |
|     Crossclaim Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| J. BRIAN HITTINGER, individually, | ) | |
|     Crossclaim Defendant. | ) | |

**OPINION AND ORDER**

The Crossclaim Defendant, J. Brian Hittinger, served as permanent equity receiver in these proceedings from October 18, 2000, to March 22, 2001. After LePetomane, Inc., succeeded Hittinger as the receiver, it sued Hittinger for negligence, breach of fiduciary duty, and legal malpractice. LePetomane alleges that while Hittinger was the receiver, he failed to preserve and protect the assets of the receivership estate when he did not procure insurance for a valuable estate asset, a private residence in Carmel, Indiana. LePetomane claims that, because the residence was then damaged by arson, Hittinger is liable for the loss the Estate suffered from the fire on the uninsured property. LePetomane also submits that Hittinger should be disgorged of the professional fees paid to him as the receiver and as legal counsel to the receiver.

This matter is before the Court on LePetomane's Motion for Summary Judgment on its claims against Hittinger.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On consideration of a motion for summary judgment, a court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine

issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp*., 200 F.3d 485, 492 (7th Cir. 2000). The court must consider the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp*., 168 F.3d 998, 1009 (7th Cir. 1999); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

A "jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment in negligence cases." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 n.12 (1976); *see also Gracyalny v. Westinghouse Elec. Corp.*, 723 F.2d 1311, 1316 (7th Cir. 1983) (noting that summary judgment is rarely appropriate in negligence cases because "questions concerning the reasonableness of the parties' conduct, forseeability and proximate cause particularly lend themselves to decision by a jury"); *Cox v. N. Ind. Pub. Serv. Co.*, 848 N.E.2d 690, 696 (Ind. Ct. App. 2006) ("Summary judgment must be carefully considered in negligence cases because they are particularly fact sensitive and are governed by

3

the objective reasonable person standard—one best applied by a jury after hearing all of the evidence."). However, whether a particular act or omission is a breach of duty can be a question of law "where the facts are undisputed and only a single inference can be drawn from those facts." *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003) (citing *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992)).

**STATEMENT OF FACTS**

William and Linda Tankersley are defendants, along with corporate entities, in an action filed by the Federal Trade Commission (FTC) for unfair or deceptive trade practices under the Federal Trade Commission Act. The FTC alleges that William Tankersley operated a fraudulent telemarketing business targeting persons seeking employment with the United States Postal Service. In the course of the underlying suit, the Court entered a temporary restraining order and preliminary injunction to freeze the Defendants' assets. The Court appointed Hittinger as the temporary equity receiver of the assets controlled by the Defendants.

While serving as temporary equity receiver, Hittinger filed a petition for writ of attachment and contempt to compel the Defendants to turn over a minivan in their possession. On June 15, 1999, the Court entered the writ. Hittinger then took possession of the van and obtained insurance for it. The van was later stolen from the parking lot of Hittinger's law firm. The Tankersleys were suspected of the theft. The theft increased Hittinger's awareness that the Tankersleys might prevent the turnover of assets.

On October 18, 2000, the Court granted summary judgment for the FTC and against the Defendants on the issue of consumer redress. As part of the judgment, the Court ordered restitution

4

in the amount of $28,149,600. Pursuant to the restitution award, the Court ordered the Tankersleys to turn over all their real and personal property to a receiver.

As part of its judgment, the Court appointed Hittinger as the permanent equity receiver of the assets of the eight corporate Defendants and the Tankersleys. Hittinger had no prior experience as a receiver. Hittinger is a licensed attorney and acted as legal counsel for the receiver. He did not obtain outside counsel to advise him in the receiver role.

The Court directed Hittinger to marshal and dispose of the remaining assets, including real estate assets, of the Defendant corporations and the Tankersleys. Hittinger was charged with seizing and taking control of all property and other assets and preventing dissipation of assets. The Court ordered that title to all such real estate be turned over to Hittinger, as receiver, within ten days of the order. On October 31, 2000, the Clerk entered its Entry of Judgment.

One of the assets subject to the turnover order was a house with land located in Carmel, Indiana, that was the Tankersleys' residence. Title to the Carmel property was held in trust for the benefit of the Tankersleys by Robert K. Stallwood, a trustee under a deed in Trust. Hittinger understood that he had a responsibility to protect the assets in the receivership estate, including keeping insurance on property as soon as it became insurable. However, Hittinger believed that he could not insure the Carmel property until he obtained both title and possession of the property. He based this belief on his prior dealings with MacLennan & Bain, the insurance company he used to insure other assets in the estate, such as the minivan. He stated in his deposition that the insurance company denied his attempts to obtain coverage on other properties and assets for which he did not have title, even though he had a court order granting him receivership over the property.

Hittinger took steps to obtain title to the Carmel property. In a letter to trustee Stallwood

5

dated November 10, 2000, Hittinger requested the deed to the Carmel property. Stallwood's attorney informed Hittinger that delivery of the deed was delayed because of a pending appeal of the Court's October summary judgment order. On December 5, 2000, the Court denied the Tankersley's motion to stay enforcement of the summary judgment order pending their appeal.

In January 2001, Hittinger made further attempts to obtain the deed. Among other things, he filed a motion to show cause why the Tankersleys should not be held in contempt for failure to surrender title to their residence and to turn over other assets. On January 11, 2001, the Court ordered a hearing on the motion. On January 18, 2001, Stallwood mailed the Trustee's land deeds to Hittinger and also provided a copy by fax. Hittinger received the deed by mail on January 22.

As a result of the January 18 facsimile, Hittinger directed his paralegal, Barbara Pryatel, to contact MacLennan & Bain regarding insurance on the Carmel property. On January 25, 2001, Pryatel left a phone message with MacLennan & Bain and, on January 30, Ross MacLennan returned the phone call. MacLennan gathered information about the property for the purpose of providing a quote. On January 31, MacLennan & Bain informed Hittinger's office that it was working on quotes.

During the time that Hittinger tried to get the title, he continued to search for information about the Tankersleys' property, including whether it was insured. On January 30, William Tankersley told Hittinger during a Court-ordered meeting, that the Carmel property was fully insured, but refused to provide proof of insurance. William Tankersley also advised that he was moving from the Carmel residence within the week. The Tankersleys' counsel also stated that the property was insured.

On January 31, Hittinger requested assistance from the United States Marshal in serving

6

process to take possession of the Carmel residence. On February 1, Hittinger filed a Petition for Writ of Execution and Assistance and Hold Harmless Agreement directing the Marshal's Office to assist him in seizing and securing the real estate.

On February 3, 2001, a fire, caused by arson, damaged the Carmel residence. The Carmel property was not covered by fire insurance on this date. Coverage under the Tankersleys' insurance policy for the Carmel property had ended on November 8, 2000. Before the fire, the value of the Carmel property was $1.1 million. The Carmel property sold for $295,000, resulting in net proceeds to the receivership estate of $253,214.85.

On March 19, 2001, Hittinger petitioned the Court to allow him to withdraw as receiver and to appoint a new receiver. On March 22, 2001, this Court granted Hittinger's Petition and appointed LePetomane, Inc., as the Permanent Successor Equity Receiver. On September 19, 2003, LePetomane filed a crossclaim against Hittinger for negligence, breach of fiduciary duty, and legal malpractice for his failure to obtain insurance on the Carmel property.

## DISCUSSION

**A.     Elements**

The three elements of the tort of negligence are: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Cox v. N. Ind. Pub. Serv. Co.*, 848 N.E.2d 690, 696 (Ind. Ct. App. 2006). The elements of breach of fiduciary duty are the same, except that the duty owed and breached must have been a fiduciary one. *See W & W Equip. Co. v. Mink*, 568 N.E.2d 564, 570–76 (Ind. Ct. App. 1991). Legal malpractice occurs when an attorney is hired, the attorney breaches the duty created by his

employment by failing to exercise ordinary skill and knowledge, and the negligence is a proximate cause of the plaintiff's damages. *Rice v. Strunk*, 670 N.E.2d 1280, 1283–84 (Ind. 1996).

It is not disputed that Hittinger, as the appointed receiver, owed the receivership estate a duty to exercise reasonable care to protect and preserve the assets of the receivership estate. *See* 65 Am. Jur. 2d Receivers § 146. In carrying out this duty, the receiver "must exercise ordinary care and prudence, that is, the same care and diligence that an ordinary prudent person would exercise in handling his or her own estate, or under like circumstances." *Id.* If a receiver is uncertain how to preserve property, he should petition the court for instructions. *Id.*

The parties further do not dispute that, as part of his duties in protecting the assets of the receivership estate, Hittinger owed a duty to obtain insurance for the protection of the estate assets.[1] Nor do they dispute that his failure to obtain insurance was a proximate cause of the receivership estate's inability to make an insurance claim on the fire-damaged property, requiring it to bear the losses to the Carmel property. The parties' sole dispute for summary judgment centers around the breach element.

LePetomane argues that no reasonable jury could find in favor of Hittinger because the "evidence of (a) Hittinger's failure to exercise reasonable care as receiver; (b) his failure to exercise ordinary care as a fiduciary in administering the assets of the receivership estate, and (c) his failure to exercise ordinary skill and knowledge as counsel for the receiver" is "overwhelming." (DE 855 at 2–3.) Hittinger responds that, under Indiana law, whether a particular act or omission is a breach of duty is generally a question of fact for the jury and that

---

[1] Hittinger does not actually discuss his obligations or his standard of care as counsel to the receiver separate from his duties as a receiver.

8

this question of fact affects all three of LePetomane's claims. He argues that a reasonable jury could find that he "acted reasonably under the circumstances even though he did not actually receive insurance coverage on the Carmel property." (DE 861 at 10.) As evidence that he acted reasonably, Hittinger points to his diligence in seeking title to the property in the context of his belief that he could not obtain insurance coverage without the title. He also notes the information he received from William Tankersley and Tankersley's counsel that the property was fully insured as a fact that a jury could consider in deciding whether his actions were reasonable as a receiver, fiduciary, and attorney.

Hittinger may be correct in his argument that "[b]ased on the beliefs [he] possessed at the time regarding insurance coverage on the Carmel property," he "took reasonable steps to gain insurance." (DE 861 at 13.) Indeed, it is undisputed that he took numerous steps following his appointment as receiver to obtain the title to the Carmel property and that he believed this was a necessary step to obtaining insurance. However, the relevant inquiry is not whether he subjectively believed his conduct conformed to the standards required of a receiver, a fiduciary, or an attorney, but whether his conduct objectively met the standard of care required by his respective duties. *See Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004) (stating that negligence cases are governed by a standard of the objective reasonable person). Hittinger's duty of care to the receiver estate required him to obtain insurance on insurable assets. Contrary to Hittinger's assertion in his response to the summary judgment motion, whether he actually had an insurable interest in the Carmel property when he was appointed as the receiver is a relevant issue. However, neither does the inquiry end with the insurable interest determination, as LePetomane suggests. If Hittinger had an insurable interest in the property even before he had title (i.e.,

Hittinger's belief was mistaken), the Court must still inquiry whether this mistaken belief, which led to the failure to obtain insurance, was a reasonable belief for a receiver, a fiduciary, or an attorney to hold. Or, alternatively, whether it was so outside the requisite standard of care that only a single inference can be drawn from the fact that Hittinger did not realize that title was not required to obtain insurance coverage on the Carmel property.

**B.      Insurable Interest**

To maintain a valid insurance policy, the insured must have an insurable interest in the property. *Loving v. Ponderosa Sys., Inc.*, 479 N.E.2d 531, 536 n.1 (Ind. 1995). Usually, the person having an insurable interest in the property holds title to that property. However, it is not essential for the possessor of an insurable interest to hold title to the property. *Erie-Haven, Inc. v. Tippman Refrigeration Constr.,* 486 N.E.2d 646, 650 (Ind. Ct. App. 1985); *United Farm Bureau Mut. Ins. Co. v. Blanton*, 457 N.E.2d 609, 611 (Ind. Ct. App. 1983). It is possible for more than one party to have an insurable interest in real estate, and their interest need not arise from ownership. *Property Owners Ins. Co. v. Hack*, 559 N.E.2d 396, 399 (Ind. Ct. App. 1990). An insurable interest exists when one obtains a benefit from the existence of the property or would suffer a loss from destruction of the property. *Erie-Haven,* 486 N.E.2d at 650 (Ind. Ct. App. 1985); *Blanton*, 457 N.E.2d at 611 ("A person has an insurable interest in property if he obtains a benefit from the property's existence or would suffer a loss from its destruction. It is not essential that he hold a security interest in or title to the property."); *see also Harrison v. Fortlage*, 161 U.S. 57 (1896) ("It is well settled that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he

10

will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself.").

Hittinger had an insurable interest in the Carmel property on October 18, 2000, when the Court appointed him as the permanent equity receiver because the receivership estate, and the consumers to be redressed by the assets in the estate, would suffer a loss from its destruction.

## C. Reasonable Receiver and Fiduciary Duty

LePetomane argues that Hittinger acted unreasonably when he did not attempt to obtain insurance on the Carmel property until more than three months after his appointment as permanent equity receiver. This, of course, was a result of Hittinger's mistaken belief about insurable interests. LePetomane's argument assumes that a reasonable receiver would have known that title to the property was not necessary to obtain insurance. That is, that Hittinger's mistaken belief was, itself, unreasonable. Therefore, the Court must consider what the evidence shows regarding whether it was reasonable for Hittinger to hold the beliefs he did about insurable interests.

Hittinger claims that his past dealings with insurance company MacLennan & Bain during his temporary receivership led him to believe that he needed title and possession of the Carmel property before he could get the property insured. He does not state any other reason for his mistaken belief. He does not indicate that he sought direction from the court, his attorney, another receiver, another insurance company, or the FTC, despite his lack of experience as a receiver. Nevertheless, the Court cannot say that Hittinger failed, as a matter of law, to exercise the same care and diligence that an ordinary prudent person would exercise in handling his or her

11

own assets and estate.

What Hittinger believed, and that his belief was wrong, are adequately developed in the record. LePetomane argues that Hittinger's "mistaken belief that he could not obtain insurance may describe one reason for the delay, but it does not excuse Hittinger's breach of duty." (DE 862 at 11.) This argument assumes that Hittinger's belief was not only wrong, but unreasonably wrong. But LePetomane does not present evidence showing that Hittinger should have known that he had an insurable interest even before he had title (even though this was the state of the law). This point is not adequately developed in the record and Hittinger is entitled to have a jury determine whether he should have done more, particularly given his inexperience as a receiver, to understand when he had an insurable interest in the Carmel property.

LePetomane argues that a receiver should petition the Court when it is unsure how to preserve assets and that Hittinger should have sought an order authorizing him to obtain insurance during the time he lacked title and possession. Again, whether Hittinger's failure to petition the Court fell below a reasonable standard of care, given the totality of circumstances, is for a jury to determine. The law cited by LePetomane indicates that a receiver should petition the court when it is unsure "how" to preserve assets. But Hittinger was already aware that, as part of his duties to preserve the Carmel estate, he had to get it insured. It remains open to dispute whether the type of petition contemplated by receivership law would have helped Hittinger obtain insurance coverage more quickly.

Although the facts are largely undisputed, they do not lend themselves to only a single inference. Whether Hittinger's belief was so unreasonable as to constitute negligence has not been established as a matter of law. Therefore, whether Hittinger conformed his conduct to the

12

requisite standard of care, such that he is liable for negligence or breach of fiduciary duty, is a triable issue of fact.

**D.     Reasonable Attorney**

Hittinger, who is an attorney, did not merely act as the receiver for the estate, but also acted as counsel to the receiver and charged legal fees and costs for his services. Hittinger did not hire outside legal counsel.

At first blush, it would appear that establishing that an attorney committed malpractice would be more onerous than establishing negligence or breach of fiduciary duty. After all, to prove legal malpractice, expert testimony is normally required to demonstrate the standard of care by which an attorney's conduct is measured. *Indianapolis Podiatry, P.C. v. Efroymson*, 720 N.E.2d 376, 383 (Ind. Ct. App. 1999). However, in this case, the conduct at issue is of such a nature that the common knowledge of a layperson is sufficient to find the standard of care required and breach of that standard. Hittinger failing to advise his client (himself) that he had an insurable interest in the Carmel property, even though Hittinger knew that the receiver had a duty to obtain insurance on receivership property.[2] That a lawyer would advise his client on the status of the law in this regard is so simple a concept that it does not require expert testimony. This is especially the case when the lawyer sees that his client is operating under false impressions about the law on an issue so critical to the preservation of the receivership estate's assets.

LePetomane argues that this failure to advise the receiver caused the receiver to delay

---

[2] Because Hittinger was both the lawyer and the client, the analysis becomes somewhat unnatural.

13

more than three months before he sought insurance coverage, presumably because he continued to operate under the mistaken belief that he first had to have title and possession before he could obtain insurance. To be sure, Hittinger's failure—as a lawyer—to advise Hittinger—as a receiver—on the insurable interest issue had some effect. At the very least, remaining silent failed to dispel a mistaken belief. Neither can it be disputed on the record before the Court that the reason Hittinger worked diligently to obtain the title, but did not in the meantime obtain insurance, was due to his erroneous beliefs. Hittinger admits as much. However, neither party addresses whether Hittinger would have acted differently in his attempts to obtain insurance if he had been informed by legal counsel that he did not need title to obtain insurance coverage. LePetomane has not established that receiver Hittinger would not have acted the same with this advise, choosing instead to rely on his prior experience with the insurance company instead. This goes to the issue of damages and proximate cause and is an issue upon which LePetomane bears the burden of proof. Therefore, even though Hittinger has not specifically addressed this issue, the Court cannot grant LePetomane's motion for summary judgment because it has not established that it is entitled to a judgment as a matter of law for Hittinger's failure to advise the receiver about the insurable interest.

   LePetomane also argues that Hittinger breached his legal duties to the receiver in another way. It argues that if Hittinger believed he could not obtain insurance for the Carmel property without title and possession, and he was having difficulty obtaining such title and possession, it was his duty as counsel to the receiver to petition the Court for instructions or an order granting him an insurable interest in the property. Hittinger submits that he did petition the Court when he filed a motion to show cause why the Tankersleys should not be held in contempt for failure to

14

surrender title. The exact nature of the petition that Hittinger should have filed is not so clear from the record that the Court can say, as a matter of law, that Hittinger's actions were negligent. The standard of care by which an attorney's conduct is measured in this particular situation has not been clearly established such that the common knowledge of laypersons is sufficient.

### E.      Federal Rule of Civil Procedure 56(d)

LePetomane requests that if the Court does not award it full judgment, it enter an order pursuant to Rule 56(d), determining and specifying which facts are not genuinely at issue and must be treated as established in this action. Rule 56(d) provides:

> **(d) Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed. R. Civ. P. 56(d). The procedure serves two purposes: to salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues. *Lovejoy Elecs., Inc. v. O'Berto*, 616 F. Supp. 1464, 1473 (N.D. Ill. 1985).

Hittinger did not controvert the vast majority of the facts presented by LePetomane in its motion for summary judgment. Thus, the judicial effort involved in the denial of the motion for summary judgment was not extensive as it relates to fact finding. Moreover, given the position

15

taken by Hittinger in response to the motion, the issues for trial already appear to be relatively narrow. The Court finds that an order under Rule 56(d) would not be more judicious than the parties' own pretrial orders and submissions on the issues. Therefore, the Court declines to enter an order specifying the facts that appear to exist without substantial controversy. The Court expects that the parties will, consistent with this Order, mutually determine the facts that are not in dispute.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment [DE 854] is DENIED.

SO ORDERED on November 5, 2007.

                                                s/ Theresa L. Springmann
                                                THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT